**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| ERIK NYBY, on behalf of himself and all others similarly situated, | : : : | |
| Plaintiff, | : : | **Civil Action No. 15-886 (ES) (MAH)** |
| v. | : : | **OPINION** |
| CONVERGENT OUTSOURCING, INC., | : : : | |
| Defendant. | : : : | |

**SALAS, DISTRICT JUDGE**

      This case arises from alleged violations of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 *et seq.* Pending before the Court are the following two motions: (1) a joint motion for final approval of a settlement between Plaintiff Erik Nyby ("Nyby" or "Plaintiff") and Defendant Convergent Outsourcing, Inc. ("Convergent" or "Defendant"), (D.E. No. 58); and (2) Class Counsel's motion seeking an award of reasonable costs, attorneys' fees, and an incentive award, (D.E. No. 56). On April 6, 2017, the Court held a Fairness Hearing.[1] The Court received no objections and there were two opt-out requests.[2]

---

[1]     The Court cites to the transcript of the Fairness Hearing as "4/6/17 Tr." in this Opinion.

[2]     On May 4, 2017, the Clerk of Court posted a letter (dated April 28, 2017) written to the Court in Spanish by Ms. Carmen Gautreau. (D.E. No. 63). The Clerk entered the letter on the docket as an "objection," but an English translation provided by the parties reveals that Ms. Gautreau's letter takes no issue with the class settlement agreement nor does it characterize itself as an objection. (D.E. No. 64). As the parties aptly note, at most the letter amounts to a request to opt out. (*See id.*). And, although the deadline for any objections or opt-out requests was March 17, 2017, the parties agreed to permit Ms. Gautreau to exclude herself from the class out of time. (*Id.*).

- 1 -

For the reasons in this Opinion, the Court certifies the class for purposes of settlement, grants final approval of the proposed settlement, and awards costs, attorneys' fees, and an incentive award.

## I.  FACTUAL & PROCEDURAL BACKGROUND

Nyby alleges that Convergent sent him a collection letter (the "Letter") concerning a certain debt owned by Galaxy Asset Purchasing, LLC.  (*See* D.E. No. 3 ("Am. Compl.") ¶ 8). He alleges, however, that the debt Convergent was trying to collect was barred by New Jersey's statute of limitation and, therefore, he had no obligation to pay the debt.  (*Id.* ¶ 10).  Nyby alleges that (1) "Defendant falsely represented the character, amount and legal status of the debt through its [L]etter in violation of 15 U.S.C. § 1692e(2)" and (2) the alleged acts and practices of Defendant "constitute unfair and unconscionable means to collect a debt in violation of 15 U.S.C. § 1692f."  (*Id.* ¶¶ 40, 45).  In short, Nyby alleges that Convergent's Letter violated the FDCPA as to him and a class of similarly situated New Jersey consumers to whom the Letter was sent.

Convergent answered Nyby's Complaint (D.E. No. 5), but then filed a motion for judgment on the pleadings.  (D.E. No. 18).  The Court received several submissions in support and in opposition to Convergent's motion.  (*See* D.E. Nos. 21, 22, 24, 38, 42 & 43).

Meanwhile, the parties exchanged discovery—including service of interrogatories, requests for production, and depositions—pursuant to a pretrial scheduling order.  (*See* D.E. No. 15; D.E. No. 59-1 ("Taylor Decl.") ¶¶ 3-7).  During this process, there were several discovery disputes and extensions of discovery-related deadlines.  (*See* D.E. Nos. 23, 29, 37 & 41).

The Undersigned held a settlement conference, but the parties were unable to reach an agreement.  (*See* D.E. No. 46).  The parties, however, agreed to private mediation in an effort to

resolve this matter.  (*See* D.E. Nos. 46 & 48; Taylor Decl. ¶ 9).  The mediation commenced on August 31, 2016, before the Hon. James R. Zazzali (Ret.), and an agreement in principle was reached—and confirmed—on September 12, 2016.  (Taylor Decl. ¶¶ 10-11).

On October 3, 2016, the parties informed this Court that a settlement on a class-wide basis had been reached and that the parties would move for preliminary approval from this Court.  (*See* D.E. Nos. 49 & 50).  On November 22, 2016, the parties jointly moved for this Court to preliminarily approve their class action settlement.  (D.E. Nos. 51 & 52).  On December 20, 2016, the Court held a telephonic hearing concerning the parties' joint motion to preliminarily approve the settlement (*see* D.E. No. 53) and subsequently issued an order granting the parties' motion (D.E. No. 55).

That order effectuated the following (among other things): (1) certification of a class for settlement purposes; (2) preliminarily approval of the class settlement; (3) appointment of settlement class counsel; (4) appointment of a claims administrator; (5) approval of forms and procedures for class notice; and (6) appointment of Nyby as the Class Representative.  (*See* D.E. No. 55).  In particular, the Class was defined as follows: "All persons sent a collections notice from Convergent between February 5, 2014 through the date of entry of this Preliminary Approval Order that sought to collect on a time-barred debt that was handled by Convergent for Galaxy Asset Purchasing, LLC."  (*Id.* ¶ 1(a); *see also* D.E. No. 52-1 ¶ 2.8; D.E. No. 62-1).

## II.  OVERVIEW OF THE PROPOSED SETTLEMENT & RESPONSE

The proposed Settlement Agreement provides a "Settlement Fund" of $76,500 "to be paid by Convergent as set forth in th[e] Agreement to Settlement Class Members."  (D.E. No. 52-1 ¶¶ 2.35, 5.1).  "Settlement Class Members" are "those persons who are members of the Class, and who do not timely and validly request exclusion from the Settlement Class."  (*Id.* ¶ 2.34).  The

parties estimated "there are approximately 3,599 individuals in the Class." (*Id.* ¶ 2.8).

The parties also agreed that Convergent will "pay all reasonable costs, fees, and expenses incurred by the Claims Administrator in the course of providing the Class Notice and other services related to the administration and payment of the Settlement." (*Id.* ¶ 5.3). Further, the parties agreed that Class Counsel would move the Court "for an award of attorneys' fees and expenses, to be paid by Convergent separate and apart from the Settlement Fund, in an amount not to exceed SEVENTY THOUSAND DOLLARS ($70,000.00)." (*Id.* ¶ 6.1). Finally, the parties agreed that: (1) "Convergent agrees to pay Plaintiff ONE THOUSAND DOLLARS ($1,000.00) in resolution of his individual claims separate and apart from the Settlement Fund" (*id.* ¶ 6.2); and (2) "Plaintiff will also ask the Court to award him an incentive award of FOUR THOUSAND DOLLARS ($4,000.00) (in addition to the distribution he may receive) for the time and effort he has personally invested in this Action separate and apart from the Settlement Fund" (*id.* ¶ 6.3).

The Claims Administrator received data "on or about December 5, 2016, containing 3,983 Class Members." (*See* D.E. No. 59-2 ("Radetich Decl.") ¶ 4). But the Claims Administrator "identified 437 duplicate records, leaving 3,546 unique Class Member records." (*Id.*). Accordingly, the Claims Administrator "caused 3,546 Notices to be mailed via USPS First Class Mail" by the Court-ordered deadline of January 30, 2017. (*Id.* ¶ 6; D.E. No. 55 ¶ 3). Settlement Class Members had until March 17, 2017 to submit a claim, object or opt out. (D.E. No. 55 ¶¶ 5-7).

As of March 22, 2017 (the day before the parties' joint motion for final approval was due), the Claims Administrator "received 379 timely claims forms," which represents a filing rate of "approximately 10.69%." (Radetich Decl. ¶ 7).

On April 6, 2017, the Court held a Fairness Hearing pursuant to Federal Rule of Civil Procedure 23(e)(2). At the Fairness Hearing, no objectors appeared. Further, the parties informed the Court that the number of claims had increased to 413. (4/6/17 Tr. at 5:19-6:11). With final approval, each of the 413 claimants will receive $185.23 as their *pro rata* share of the Settlement Fund. (*Id.* at 6:13-14). As of this Opinion, there are two exclusion requests and no objections to the settlement. (*See also* Radetich Decl. ¶ 10; 4/6/17 Tr. at 3:25-4:13; D.E. No. 62-1 ¶ 7; D.E. No. 64).

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." "The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions ("In re Prudential")*, 148 F.3d 283, 299 (3d Cir. 1998) (quoting *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975)).

The "law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig. ("GM Truck Prods.")*, 55 F.3d 768, 784 (3d Cir. 1995). Nevertheless, "[t]he purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 592-93 (3d Cir. 2010); *see also In re Pet Food Prods. Liab. Litig. ("In re Pet Food")*, 629 F.3d 333, 349 (3d Cir. 2010) ("We have stressed the importance of Rule 23(e), noting that a district court acts as a fiduciary, guarding the claims and rights of the absent class members.") (internal quotation marks omitted).

## IV. DISCUSSION

### A. Whether Class Certification is Appropriate for Purposes of Settlement

"When deciding a motion for settlement, the Court must first determine whether the settlement class is appropriate for certification and then turn to whether the settlement itself should be approved." *Alin v. Honda Motor Co.*, No. 08-4825, 2012 WL 8751045, at *2 (D.N.J. Apr. 13, 2012). Rule 23 "is designed to assure that courts will identify the common interests of class members and evaluate the named plaintiffs' and counsel's ability to fairly and adequately protect class interests." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (en banc) (quoting *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010)). "[A]ctions certified as settlement classes must meet the same requirements under Rule 23 as litigation classes." *GM Truck Prods.*, 55 F.3d at 799.

Accordingly, the Court "first must determine that the requirements for class certification under Rule 23(a) and (b) are met." *In re Pet Food*, 629 F.3d at 341. As discussed below, the Court finds that the Rule 23(a) and 23(b)(3) requirements are satisfied.

#### 1. Rule 23(a): Numerosity, Commonality, Typicality and Adequacy of Representation

Rule 23(a) provides that

> [o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

These four requirements are referred to as "(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." *In re Prudential*, 148 F.3d at 308-09.

### i.  Numerosity

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable."  "There is no minimum number of members needed for a suit to proceed as a class action," and "Rule 23(a)(1) requires examination of the specific facts of each case." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012).

Here, there are over 3,500 individuals in the Settlement Class.  (*See, e.g.*, D.E. No. 52-2 ¶ 19; Radetich Decl. ¶ 4).  The Court finds that joinder of so many individuals would be impracticable and the numerosity requirement is therefore satisfied.  *See Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) ("No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.").

### ii.  Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury" and that their claims "depend upon a common contention" that "is capable of classwide resolution."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (internal quotation marks and citation omitted).  The contention is capable of "classwide resolution" if the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*; *see also In re NFL Players' Concussion Injury Litig.*, 307 F.R.D. 351, 371 (E.D. Pa. 2015) ("The [commonality] standard is not stringent; only one common question is required."), *aff'd*, 821 F.3d 410 (3d Cir. 2016).

Here, the common contention is the alleged unlawfulness of a form debt-collection letter. In other words, the claims at issue are based on the same Letter and concern the same alleged

violations of the FDCPA.  The Court finds that the commonality requirement is satisfied.  *See Little-King v. Hayt Hayt & Landau*, No. 11-5621, 2013 WL 4874349, at *5 (D.N.J. Sept. 10, 2013) ("[T]he Court finds that there are common questions of law or fact shared among the class. Importantly, all members of the class received a materially identical debt-collection letter from Defendants. . . . All members of the class also share common questions of law, in particular, whether that letter was defective under the FDCPA.").

### iii.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  "The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531 (3d Cir. 2004).  "The typicality criterion is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the claims of the absentees."  *Baby Neal v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994).  "However, typicality, as with commonality, does not require that all putative class members share identical claims."  *Warfarin Sodium Antitrust Litig.*, 391 F.3d at 531-32. "Indeed, even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories."  *Baby Neal*, 43 F.3d at 58.

Here, Nyby alleges the same claims and injury as the Settlement Class Members—i.e., receiving the same Letter that allegedly violates the FDCPA.  Accordingly, typicality is satisfied. *Cf. Weissman v. Gutworth*, No. 14-666, 2015 WL 3384592, at *3 (D.N.J. May 26, 2015) ("Plaintiff's claims are identical to the class claims. They are predicated on the same legal and

factual circumstances: Defendants' alleged practice of mailing collection letters with legally deficient language. Plaintiff's claims are sufficiently typical.").

### iv. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This requirement "has two components designed to ensure that absentees' interests are fully pursued." *Warfarin Sodium Antitrust Litig.*, 391 F.3d at 532. *First*, "the adequacy inquiry tests the qualifications of the counsel to represent the class." *Id.*; *see also GM Truck Prods.*, 55 F.3d at 801 ("Courts examining settlement classes have emphasized the special need to assure that class counsel: (1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's length from the defendant.").[3] Here, the Court's independent review of the background of Class Counsel shows that counsel is qualified—i.e., has the appropriate experience in class action and FDCPA litigation. (*See, e.g.*, D.E. Nos. 52-2 ¶¶ 4-6 & 52-3 ¶ 4). Class Counsel litigated this case for nearly two years, taking extensive discovery and engaging in—at times—hotly contested motion practice. *Second*, the adequacy inquiry "seeks to uncover conflicts of interest between named parties and the class they seek to represent." *Warfarin Sodium Antitrust Litig.*, 391 F.3d at 532. Here, as noted previously, Nyby received the same allegedly unlawful Letter as Settlement Class Members, and no conflicts with persons in the Settlement Class are apparent to this Court.

### 2. Rule 23(b)(3): Predominance and Superiority

Rule 23(b)(3) provides, in relevant part, that "a class action may be maintained if Rule 23(a) is satisfied and if . . . the court finds that the questions of law or fact common to class

---

[3] Another court in this District rightly noted that, "[a]s a result of the 2003 amendments to the Federal Rules of Civil Procedure, the issue of appropriate class counsel is guided by Rule 23(g), rather than 23(a)(4)." *In re Royal Dutch/Shell Transport Sec. Litig.*, No. 04-374, 2008 WL 9447623, at *14 n.3 (D.N.J. Dec. 9, 2008) (citation omitted). As in that case, however, "[f]or the sake of convenience . . . the adequacy of counsel is discussed here." *Id.*

members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." "The twin requirements of Rule 23(b)(3) are known as predominance and superiority." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008).

So, under Rule 23(b)(3), "two additional requirements must be met" in this case: "(1) common questions must predominate over any questions affecting only individual members (the predominance requirement), and (2) class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy (the superiority requirement)." *See Warfarin Sodium Antitrust Litig.*, 391 F.3d at 527 (internal quotation marks omitted).

### i. Predominance

"Parallel with Rule 23(a)(2)'s commonality element, which provides that a proposed class must share a common question of law or fact, Rule 23(b)(3)'s predominance requirement imposes a more rigorous obligation upon a reviewing court to ensure that issues common to the class predominate over those affecting only individual class members." *Sullivan*, 667 F.3d at 297. The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan*, 667 F.3d at 298.

Here, as already discussed, it is plainly apparent that the common question of the legality of the Letter dominates all class claims. As Class Counsel aptly noted during the Fairness Hearing, if the Court resolved Convergent's motion for judgment on the pleadings against Nyby, "everybody's case would be done"; if the Court resolved the motion in favor of Nyby,

"everybody in the class would have their FDCPA claim." (*See* 4/6/17 Tr. at 7:20-8:4). The Court thus finds that the common issues here adequately predominate over any individual issues. *Cf. Weissman*, 2015 WL 3384592, at *3 ("Plaintiff alleges that Defendants sent all class members a collection letter with specific statements that violated the FDCPA. Because every class member's claim proceeds from this factual nucleus, all claims uniformly turn on the question of whether FDCPA liability flows from Defendants' letters. This question predominates over any questions related to individuals, and satisfies the Rule 23(b)(3) predominance requirement.").

### ii. Superiority

"The superiority requirement 'asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication.'" *Warfarin Sodium Antitrust Litig.*, 391 F.3d at 533-34 (quoting *In re Prudential*, 148 F.3d at 316).

The Court finds that the class action route is the superior method here. Nothing suggests that individuals are more likely to file individual actions or settle and recover on individual actions. Given the allegations in this case, the Court finds that the "class action mechanism is the superior method for bringing the present class members' claims" because it "offers prompt relief and averts the undue costs class members would incur in prosecuting their claims individually." *See Weissman*, 2015 WL 3384592, at *4.

### B. Analysis of the *Girsh* Factors

Rule 23(e)(2) provides that, "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." "In this process, 'trial judges bear the important responsibility of protecting absent class members,' and

must be 'assur[ed] that the settlement represents adequate compensation for the release of the class claims.'"  *Sullivan*, 667 F.3d at 319 (quoting *In re Pet Food*, 629 F.3d at 349) (alterations in original).  And, "where settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously, . . . district courts . . . [should] be even 'more scrupulous than usual' when examining the fairness of the proposed settlement." *Warfarin Sodium Antitrust Litig.*, 391 F.3d at 534 (quoting *GM Truck Prods.*, 55 F.3d at 805).

In so doing, the Court must consider the *Girsh* factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (internal quotation marks and ellipses omitted); *see also GM Truck Prods.*, 55 F.3d at 785; *McDonough v. Horizon Healthcare Servs., Inc.*, No. 09-571, 2014 WL 3396097, at *4 (D.N.J. July 9, 2014) ("The key question the Court must address in considering an application for approval of a class action settlement is whether the proposed settlement is 'fair, reasonable and adequate.'  The Third Circuit has set forth a number of factors relevant in making this determination [which are known as] the '*Girsh* factors . . . .'") (citation omitted), *aff'd sub nom. McDonough v. Horizon Blue Cross Blue Shield of N.J.*, 641 F. App'x 146 (3d Cir. 2015).

### *Girsh* factor one: the complexity, expense and likely duration of the litigation

"This factor captures 'the probable costs, in both time and money, of continued litigation.'"  *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001) (quoting *GM Truck*

*Prods.*, 55 F.3d at 812). As the parties state, this case involved a fervently litigated legal issue that—no matter how the Court resolved—was bound for appellate review. (*See* D.E. No. 59 at 5-6; 4/6/17 Tr. at 8:10-25). And, absent an order for an interlocutory appeal, this issue would not be before the Third Circuit until after litigation over class certification and additional motion practice. (*See id.*). Finally, inherent in all of this, of course, is the risk that the Class receives no relief at all. The Court finds that the first *Girsh* factor weighs in favor of approval.

### *Girsh* factor two: the reaction of the class to the settlement

"In an effort to measure the class's own reaction to the settlement's terms directly, courts look to the number and vociferousness of the objectors." *GM Truck Prods.*, 55 F.3d at 812. A "vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement, and the objectors' arguments otherwise are not convincing." *In re Cendant Corp. Litig.*, 264 F.3d at 235.

Here there are 413 claims, 2 opt-out requests, and, notably, no objections. Further, Class Counsel represented at the Fairness Hearing that receiving 413 claims out of the 3,546 unique Class Members—which equates to a claims rate of over 10%—in a consumer class action case such as this one represents an "above average" response. (*See* 4/6/17 Tr. at 9:1-10:10). In light of Class Counsel's experience with consumer class actions (in particular, FDCPA cases), the Court sees no reason at this time to doubt their representation that this reflects a good response rate. Moreover, the Court finds it telling that 34 additional claims were received between March 22 (the date before the March 23 deadline for the parties' motion for final approval) and the April 6 Fairness Hearing. Accordingly, this factor weighs in favor of approval.

### *Girsh* factor three: the stage of the proceedings and the amount of discovery completed

"This factor 'captures the degree of case development that class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *In re Cendant Corp. Litig.*, 264 F.3d at 235 (quoting *GM Truck Prods.*, 55 F.3d at 813).

Here, Nyby was deposed, Convergent's corporate designee was deposed, and discovery has been exchanged pursuant to Federal Rules of Civil Procedure 33 and 34. The parties have had discovery disputes that required Magistrate Judge Hammer's involvement (much to the Undersigned's appreciation). (*See* D.E. Nos. 29, 30, 34 & 37; D.E. No. 59-1 ¶¶ 12-14). Sufficient discovery has been exchanged to inform the parties' settlement negotiations. Moreover, this case involved a hotly contested legal issue—i.e., the legality of the Letter sent to Nyby and the settlement class—that the parties extensively briefed. The Court finds that this factor weighs in favor of approval.

### *Girsh* factors four and five: the risks of establishing liability and the risks of establishing damages

"By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *GM Truck Prods.*, 55 F.3d at 814. The fifth *Girsh* factor "attempts to measure the expected value of litigating the action rather than settling it at the current time." *Id.* at 816. So, "[t]he fourth and fifth *Girsh* factors survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *In re Prudential*, 148 F.3d at 319.

Here again, the Court finds relevant the parties' dispute over liability—i.e., the legality of the Letter. (*See* D.E. Nos. 21, 22, 24, 38, 42 & 43). Convergent vigorously contested liability. This dispute, of course, carried the attendant risk that the Court would resolve Convergent's motion for judgment on the pleadings against Nyby and, effectively, against those in the class. And the risk of establishing damages is even more pronounced because the FDCPA limits recovery to the lesser of $500,000.00 or 1% of the net worth of Convergent. *See* 15 U.S.C. § 1692k(a)(2)(B); *Weiss v. Regal Collections*, No. 01-881, 2006 WL 2038493, at *2 (D.N.J. July 19, 2006) ("Notably, the FDCPA would have placed a ceiling upon damages in this action based upon the financial resources of the Defendant."). This is critical because Convergent's position—which it supports with its disclosures and proffered calculation—was that its net worth was essentially zero. (*See* D.E. No. 59-1 ¶¶ 12-14).[4] Therefore, given the unequivocal risks regarding liability and damages, the Court finds that the fourth and fifth *Girsh* factors weigh in favor of approving the settlement.

### *Girsh* **factor six: the risks of maintaining the class action through the trial**

"Under Rule 23, a district court may decertify or modify a class at any time during the litigation if it proves to be unmanageable." *In re Prudential*, 148 F.3d at 321. Notably, "the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the action." *GM Truck Prods.*, 55 F.3d at 817. That said, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods.*, 521 U.S. at 620.

---

[4]     In the interests of brevity, the Court declines to set forth the parties' competing views on calculating Convergent's net worth. Suffice it to say, the Court notes that the parties have adequately set forth those views. (*See, e.g.*, 4/6/17 Tr. at 12:3-20).

On the other hand, "[t]here will always be a 'risk' or possibility of decertification, and consequently the court can always claim this factor weighs in favor of settlement." *In re Prudential*, 148 F.3d at 321. Because there are no issues apparent to the Court that might have led to decertification, the Court finds this factor neutral.

### *Girsh* factor seven: the ability of the defendants to withstand a greater judgment

This factor "is concerned with whether the defendant[] could withstand a judgment for an amount significantly greater than the Settlement." *In re Cendant Corp. Litig.*, 264 F.3d at 240. Resolution of this factor seems to beg the same question discussed under the fifth *Girsh* factor: What would be the net worth of Convergent? Convergent maintains it would be zero. Accordingly, the Settlement provides Class Members immediate benefits that, quite possibly, would not be available to them after motion practice and appellate review. Thus, the Court finds this factor weighs in favor of approval.

### *Girsh* factors eight and nine: the range of reasonableness of the settlement fund in light of the best possible recovery and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation

"The last two *Girsh* factors ask whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *In re Prudential*, 148 F.3d at 322; *see also Pro v. Hertz Equip. Rental Corp.*, No. 06-3830, 2013 WL 3167736, at *5 (D.N.J. June 20, 2013) ("The final two *Girsh* factors are typically considered in tandem."). In other words, the "last two *Girsh* factors evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case." *Warfarin Sodium Antitrust Litig.*, 391 F.3d at 538. "In order to assess the reasonableness of a proposed settlement seeking monetary relief, 'the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed

settlement.'" *In re Prudential*, 148 F.3d at 322 (quoting *GM Truck Prods.*, 55 F.3d at 806). "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved*." In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 263 (D.N.J. 2000) (internal quotation marks and citation omitted).

With final approval, each of the 413 claimants will receive $185.23 as their *pro rata* share of the Settlement Fund.  As Class Counsel aptly noted, this means that each Settlement Class Member would receive over $175 for having received the Letter.  (*See* 4/6/17 Tr. 14:16-24).  As discussed above, the Settlement provides for immediate benefits to Nyby and the Class Members that arguably would not be available after motion practice and/or appellate review.  This risk is not just any risk; it is a very real one based on the Court's review of the parties' positions concerning liability and damages.  Furthermore, the parties brought this Court's attention to other FDCPA class-action settlements (*see* D.E. No. 59 at 9) that resulted in awards that are similar or less than the one here.  *See, e.g.*, *Weissman*, 2015 WL 3384592, at *7; *Weiss*, 2006 WL 2038493, at *1-3.  Accordingly, the Court finds that this Settlement is reasonable in light of the best possible recovery and the risks inherent in this case.

### **Summary of the Court's Analysis of the *Girsh* Factors**

"The district court must make findings as to each of the nine *Girsh* factors in order to approve a settlement as fair, reasonable, and adequate, as required by Rule 23(e)." *In re Pet Food*, 629 F.3d at 350.  Having done so, the Court concludes that the *Girsh* factors weigh in favor of approval of the Settlement.  It is fair, reasonable, and adequate given the history, risks, and complexities associated with this case.

### C. Whether Notice is Adequate

Rule 23 "contains two distinct notice provisions." *In re Prudential*, 148 F.3d at 326. "For classes certified under 23(b)(3), members must be provided with 'the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *Weissman*, 2015 WL 3384592, at *4 (quoting Fed. R. Civ. P. 23(c)(2)(B)). Further, because the parties seek simultaneous certification of the Class and approval of the proposed Settlement, "notice must satisfy both the requirements of Rule 23(c)(2)(B) and Rule 23(e)(1)." *In re NFL Players' Concussion Injury Litig.*, 307 F.R.D. at 382-83.

Rule 23(c)(2)(B) provides that, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The Rule provides that the notice

> must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

And Rule 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Notably, due process requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The Court finds that the notice provided to Class Members in this case meets the aforementioned requirements. (*See* D.E. No. 59-2, Ex. A to Radetich Decl.). It concisely, but clearly describes the action and the claim against Convergent. (*See id.* at 1). It describes the scope of the conditionally certified Settlement Class (including the approximate number of people in the Class) and the proposed Settlement terms. (*See id.* at 2). It sets forth detailed procedures for opting out, submitting a claim, or objecting—including the deadline by which to do so. (*See id.* at 1-4). It describes the consequences of Class Members' choices (for example, that filing a claim means the member cannot sue or be part of any other lawsuit against Convergent about the claims or issues in this case). (*See id.*). It provides the time, place, and reason for the Fairness Hearing. (*See id.* at 3). It identifies Class Counsel, but also states that a Class Member may choose his or her own attorney who must enter an appearance with the Court under a heading that says "The Lawyers Representing You." (*Id.*).

As for the method of providing notice, Convergent was directed by this Court to provide each Class Member's last known address (based on Convergent's records) and the Claims Administrator would mail the notice. (D.E. No. 55 ¶ 3). To be sure, the Claims Administrator was directed to confirm, correct and/or update addresses that were provided. (*Id.*). In fact, the Claims Administrator found duplicate records, which narrowed the universe of potential class members. (*See* Radetich Decl. ¶ 4). "[T]o provide the best notice practicable," the Claims Administrator ran the address data "through the USPS National Change of Address ('NCOA') database and updated the data with the address changes received from NCOA." (*Id.*). In the end, the Claims Administrator "caused 3,546 Notices to be mailed via USPS First Class Mail" by the Court-ordered deadline of January 30, 2017. (*Id.* ¶ 6; D.E. No. 55 ¶ 3). Settlement Class Members had until March 17, 2017 to submit a claim, object or opt out. (D.E. No. 55 ¶¶ 5-7).

The Court finds that the notice in this case—in terms of both content and method of dissemination—meets the requirements that Due Process and Federal Rule of Civil Procedure 23 mandate.

### D.  Whether the Plan of Allocation is Appropriate (a.k.a. Plan of Distribution)

"The Court must determine whether the Plan of Allocation contemplated in the Settlement Agreement is 'fair, reasonable, and adequate.'"  *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 147 (D.N.J. 2013) (quoting Fed. R. Civ. P. 23(e)(2)).

Here, Settlement Class Members will be entitled to a *pro rata* share of the Settlement Fund—i.e., each of the 413 claimants will receive $185.23 as their *pro rata* share of the Settlement Fund.  (*E.g.*, D.E. No. 52-1 ¶¶ 5.1, 5.2; D.E. No. 59-2, Ex. A to Radetich Decl.; 4/6/17 Tr. at 5:19-6:14).  Further, the parties nominated the Center for Social Justice at Seton Hall School of Law as a *cy pres* recipient—which would receive money from the Settlement Fund left over following the expiration of checks issued after a second distribution.  (D.E. No. 59 at 10-11; D.E. No. 52-1 ¶ 12.3; *see also* D.E. No. 59-2, Ex. A to Radetich Decl. at 2 (providing notice to Class Members about *cy pres* dispersal)).[5]  "No money remaining in the Settlement Fund shall revert to or otherwise be paid to Convergent."  (D.E. No. 52-1 ¶ 12.3; D.E. No. 59-2, Ex. A to Radetich Decl. at 2).

Finally, as noted above, "Convergent agrees to pay Plaintiff ONE THOUSAND DOLLARS ($1,000.00) in resolution of his individual claims separate and apart from the Settlement Fund."  (D.E. No. 52-1 ¶ 6.2).  Class Counsel argues that this is for resolution of Nyby's individual claim.  (D.E. No. 56-1 at 5).  The FDCPA provides, in relevant part, that "any debt collector who fails to comply with any provision of this subchapter with respect to any

---

[5]     "The Center for Social Justice at Seton Hall School of Law . . . provides *pro bono* legal services for economically disadvantaged residents throughout the State of New Jersey."  *Mansour v. Seas & Assocs.*, LLC, No. 14-2935, 2016 WL 6652461, at *3 (D.N.J. Jan. 25, 2016).

person is liable to such person in an amount equal to the sum of . . . in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k(a)(2)(A). But the FDCPA also provides that, "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of . . . in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members." *Id.* § 1692k(a)(2)(B). To the extent approval of the $1,000 for resolution of Nyby's individual claim is required (which, as Class Counsel notes, is unclear under the law (*see* D.E. No. 56-1 at 5)), this appears appropriate under the FDCPA. *See* 15 U.S.C. § 1692k(a)(2); *cf. Little-King*, 2013 WL 4874349, at *2 ("Per the Settlement, Defendants have agreed to pay the named Plaintiff $1,000 in full and complete satisfaction of her statutory claims under the FDCPA, as well as an additional $1,000 to Plaintiff as an incentive award for serving as class representative.")

In sum, the Court finds that there are no apparent issues with the plan of distribution.

## VI. ATTORNEYS' FEES/COSTS & INCENTIVE AWARD

Class Counsel seeks an award of reasonable costs, attorneys' fees, and an incentive award. (D.E. No. 56). Specifically, Class Counsel requests the following: (1) $70,000 in attorney fees and costs; (2) $4,000 in an incentive award to the named Plaintiff. (*Id.*).

### A. Attorneys' Fees and Costs

Convergent has agreed to pay Class Counsel up to $70,000 for fees and expenses as part of the Settlement Agreement. (D.E. No. 52-1 ¶ 6.1). The notice to Settlement Class Members discussed above contains the following language: "Subject to the Court's approval, Convergent

will pay Class Counsel a total of not more than $70,000.00 as attorneys' fees and costs incurred with respect to the Plaintiff and the Class claims."  (D.E. No. 59-2, Ex. A to Radetich Decl.).

Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."   Rule 23(h) further provides, in relevant part, that the following procedures apply:

> (1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.
>
> (2) A class member, or a party from whom payment is sought, may object to the motion.
>
> (3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).

As Class Counsel's own cited case law (e.g., D.E. No. 56-1 at 2) states:

> "The Court must analyze the attorneys' fee provision under Rule 23(e) in much the same fashion as the settlement itself. Attorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is 'fundamentally fair, adequate, and reasonable.'"

*Little-King*, 2013 WL 4874349, at *18.

"There are two basic methods for calculating attorneys' fees—the percentage-of-recovery method and the lodestar method."  *In re Prudential*, 148 F.3d at 333.  The FDCPA has a fee shifting provision permitting recovery of costs and reasonable attorneys' fees.  *See* 15 U.S.C. § 1692k(a)(3).   Indeed, the Third Circuit has interpreted the FDCPA as requiring an award of attorneys' fees to the prevailing party.  *See Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991) ("Section 1692k(a) sets forth the three standard components of liability for

violations of the Act: it states that a debt collector who violates the act 'is liable' for actual damages, statutory damages as determined by the court, and a reasonable attorney's fee. Given the structure of the section, attorney's fees should not be construed as a special or discretionary remedy; rather, the Act mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general.").

This is relevant because the "lodestar method is more commonly applied in statutory fee-shifting cases, and is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation." *See In re Prudential*, 148 F.3d at 333; *see also Alexander v. Coast Professional Inc.*, No. 12-1461, 2016 WL 861329, at *7 (E.D. Pa. Mar. 7, 2016) ("Because the FDCPA is a fee shifting statute, this Court will apply the lodestar method in determining the reasonableness of the requested award of attorneys' fees.").[6]

"The lodestar award is calculated by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 305; *see also Alexander*, 2016 WL 861329, at *7 ("Under the lodestar method, a court begins the process of determining the reasonable fee by calculating the 'lodestar;' i.e., the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.").

"Generally, a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community. The court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar

---

[6]    *Cf. In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) ("The percentage-of-recovery method is generally favored in common fund cases because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure.") (internal quotation marks and citation omitted).

services by lawyers of reasonably comparable skill, experience, and reputation." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001). "In calculating the hours reasonably expended, a court should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." *Id.* (internal quotation marks and citation omitted).

Here, Class Counsel submits "firm time sheets reflecting work billed on behalf of Nyby and the class" showing that 203.35 hours were expended for litigating this action. (*See* D.E. No. 56-2 ¶ 14 & Ex. A thereto). This excludes (among other things) time expended for filing the motions now pending before the Court relating to final approval—namely the parties' joint motion for final approval of a settlement and Class Counsel's motion seeking an award of reasonable costs, attorneys' fees, and an incentive award. And Class Counsel provided declarations supporting the applicable hourly rates (including paralegal assistance)—which range from $125/hr to $450/hr—and the bases for these hourly rates. (*See* D.E. No. 56-2 & Ex. A thereto; D.E. No. 56-6). Based on the submitted time sheets, the lodestar here would be $85,940.00. (*See* D.E. No. 56-2 ¶ 14 & Ex. A thereto). Finally, Class Counsel submits documentation supporting $10,706.73 in costs. (*See* D.E. No. 56-2 ¶ 15 & Exs. B & C thereto).

Accordingly, the Court finds that the agreed-upon $70,000 for fees and expenses is reasonable.

**B. Incentive Award**

"Incentive awards are not uncommon in class action litigation and particularly where . . . a common fund has been created for the benefit of the entire class." *Sullivan*, 667 F.3d at 333 n.65 (citation omitted). "The purpose of these payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation,

and to reward the public service of contributing to the enforcement of mandatory laws." *Id.* (citation and quotation marks omitted).

Here, Class Counsel seeks an incentive award of $4,000 "for the time and effort [Nyby] has personally invested in this Action separate and apart from the Settlement Fund." (D.E. No. 52-1 ¶ 6.3). The Court approves this incentive award.

*First*, Nyby has been an active participant in this litigation by conferring with Class Counsel regularly, reviewing pleadings and documents, and participating in two in-person settlement conferences (one before this Court and one in private mediation). (D.E. No. 56-2 ¶ 17). Further, he was deposed concerning his individual case and fitness to serve as a class representative. (*Id.*). *Second*, the requested incentive award aligns with others granted to plaintiffs in FDCPA class action cases. *See, e.g.*, *Weissman*, 2015 WL 3384592, at *6; *Gross v. Washington Mut. Bank, F.A.*, No. 02-4135, 2006 WL 318814, at *6 (E.D.N.Y. Feb. 9, 2006); *Bonett v. Educ. Debt. Servs., Inc.*, No. 01-6528, 2003 WL 21658267, at *7 (E.D. Pa. May 9, 2003). *Finally*, Convergent agrees to pay $4,000; it will not be taken from the Settlement Fund. (*See* D.E. No. 52-1 ¶ 6.3; 4/6/17 Tr. at 23:11-25:15).

## VII. CONCLUSION

For the reasons in this Opinion, the Court certifies the class for purposes of settlement (as defined above), approves the proposed settlement, approves the requested attorney's fees and costs, and approves the class representative incentive award. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**